```
                UNITED STATES DISTRICT COURT              FILED
                NORTHERN DISTRICT OF ALABAMA           99 DEC -6 AM 9:54
                      SOUTHERN DIVISION
                                                      U.S. DISTRICT COURT
TUNJA G. SANDERS,              )                       N.D. OF ALABAMA
                               )
     Plaintiff,                )
                               )
vs.                            ) Civil Action No. CV-99-S-1844-S
                               )
UHC MANAGEMENT COMPANY, INC.,  )
UNITED HEALTHCARE CORPORATION, )
and UNITED HEALTHCARE SOUTH,   )                         ENTERED
INC., formerly known as        )
COMPLETE HEATH SERVICES, INC., )                        DEC - 6 1999
                               )
     Defendants.               )
```

## MEMORANDUM OPINION

This action is before the court on defendants' motion to stay this litigation pending the outcome of proceedings in an arbitral forum. Specifically, defendants argue that plaintiff previously was ordered to submit her employment discrimination claims to arbitration by the Honorable Sharon Blackburn, United States District Judge for the Northern District of Alabama, in a related action, *Kelly v. UHC Management Company, Inc.*, 967 F. Supp. 1240 (N.D. Ala. 1997). Defendants argue that plaintiff's present claims of employment discrimination should likewise be arbitrated under the doctrine of issue preclusion, as Judge Blackburn held that the arbitration agreement at issue in *Kelly*, the same agreement at issue in the present case, is a binding and enforceable arbitration clause. For the reasons discussed below, the court agrees with

defendants and, accordingly, finds that defendants' motion to stay is due to be granted.

## I. BACKGROUND

Plaintiff Tunja Sanders initiated the present action on July 19, 1999, by filing a two count complaint in this court, alleging: first, that defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I); and, second, "that defendants have discriminated/retaliated against Saunders because of her race" in violation of 42 U.S.C. § 1981 (Count II). Specifically, plaintiff contends that defendants demoted her from the position as Manager of Quality Assurance, where she supervised nine employees, to a position in the mail room. (Complaint ¶ 8.) Plaintiff argues that she was demoted in retaliation for her participation "as a class representative in [Kelly], which is a race discrimination class action." (Id. ¶ 9.)

Indeed, plaintiff, along with ten other employees, participated as class representatives in Kelly, an action that alleged "race discrimination in compensation, advancement opportunities and the terms and conditions of employment and alleg[ed] discriminatory breach of the defendants' affirmative

2

action plan." *Kelly*, 967 F. Supp. at 1242. Defendants sought a stay of that action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et *seq.*, on the basis that plaintiffs signed arbitration agreements which compelled them to arbitrate their race discrimination claims. *Id.* Plaintiffs opposed the motion, arguing:

> [T]he FAA is not applicable to the employment contracts in issue here, that a prior EEOC charge which included class allegations forecloses sending these plaintiffs to arbitration, and that the agreements to arbitrate were not made in a knowing and voluntary manner, were induced by fraud, are contracts of adhesion, and lack mutuality of obligation.

*Id.* at 1242-1243.

Judge Blackburn found, however, that defendants' arbitration agreements were enforceable contracts and ordered all plaintiffs, including Tunja Sanders, to submit their race discrimination claims to arbitration. *Id.* at 1260. First, the court examined the "Code of Conduct and Employee Handbook Acknowledgment" form ("acknowledgment form"), which was signed by plaintiff on February 12, 1996. The acknowledgment form begins with the following introductory statements:

> I acknowledge that I have received a copy of the United Healthcare Corporation (UHC) Code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel

3

policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.

(Evesque affidavit, Exhibit C; see also *Kelly*, 967 F. Supp. at 1243.) Also contained within the acknowledgment form is a paragraph entitled "Internal Dispute Resolution/Employment Arbitration Policy." That paragraph specifies:

> These policies provide the opportunity for prompt and objective review of employment concerns. <u>I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under UHC's policy</u>.

(Evesque affidavit, Exhibit C; see also *Kelly*, 957 F. Supp. at 1243 (emphasis supplied).) The employee handbook contained the following statement regarding the scope of its arbitration policy:

> Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim.
> . . .
> A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state, or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment, including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act.... The Policy covers any dispute

4

>       subject to arbitration which is brought on or after the
>       applicable effective date, even if the alleged act or
>       omission occurred prior to the applicable effective date.

(Evesque affidavit, Exhibit B; see also Kelly, 967 F. Supp. at 1243-1244.)

The court also examined whether the arbitration agreements were valid, namely, whether plaintiffs "entered into the arbitration agreements in a knowing and voluntary manner, [and whether] ... the agreements were induced by fraud...." Kelly, 967 F. Supp. at 1253. The court specifically addressed Tunja Sanders arguments in this regard, noting:

>       Tunja Sanders was given the acknowledgment form one
>       afternoon, signed it, and returned it to Human Resources
>       the next morning. She claims that no one at UHC
>       explained to her that the form she was signing obligated
>       her to arbitrate employment disputes.

Kelly, 967 F. Supp. at 1247. Ultimately, however, the court dismissed plaintiffs' arguments, concluding that "the arbitration agreements at issue were binding contracts" and that plaintiffs "entered into valid, enforceable written agreements to arbitrate the employment discrimination claims alleged by them." Id. at 1260. The court, therefore, granted defendants' motion to stay pursuant to § 3 of the FAA.

5

## II. DISCUSSION

Under the doctrine of collateral estoppel, or issue preclusion, a party is prevented from relitigating an issue that was actually decided in a prior action. *Gjellum v. City of Birmingham, Alabama*, 829 F.2d 1056, 1059 (11th Cir. 1987). Justice Harlan explained the rationale for the doctrine in *Southern Pacific Railroad v. United States*, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897):

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.... This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*Id.*

Whether the doctrine is applicable in a particular case "is a mixed question of law and fact in which the legal issues predominate." *McWhorter v. Dixie National Life Insurance Company*, 887 F.2d 1564, 1566 (11th Cir. 1989). If, indeed, the doctrine is

6

applicable, however, it "does not create a basis for dismissing [a plaintiff's] action." *Gjellum*, 829 F.2d at 1059. Instead, it prevents the relitigation of the previously decided issue. *Id.*

In the Eleventh Circuit, there are four prerequisites to the application of collateral estoppel:

> (1) the issue is identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action is not significantly heavier.

*Agripost, Inc. v. Miami-Dade County*, No. 97-5654, 1999 WL 1032608, at *7 n.11 (11th Cir. November 15, 1999).

The court has reviewed the above-stated factors and determines that collateral estoppel applies to the present case. First, the court finds that the issue at stake in the present case, whether plaintiff is compelled to arbitrate her employment discrimination claims rather than have them decided in a judicial forum, is identical to the one decided by Judge Blackburn in *Kelly*. Both lawsuits involve claims of employment discrimination asserted by plaintiff against the same defendants. Additionally, at the center of both disputes lies an arbitration clause — a clause that plaintiff signed prior to the litigation in *Kelly*, but which remains unmodified in the present lawsuit.

Furthermore, this issue was actually litigated in *Kelly*, as plaintiff actively disputed the arbitrability of her claims, through the submission of deposition testimony and legal arguments, and Judge Blackburn resolved the issue in defendants' favor. Moreover, the court's determination that the arbitration agreement was enforceable was not only necessary and critical to the judgment in the prior action, it was the pivotal hurdle that decided which forum would resolve plaintiffs' race discrimination claims. Finally, the burden of persuasion in the pending action is not heavier than the burden that existed in the previous action; indeed, both actions were filed in federal court and the burdens are identical.

### III.   CONCLUSION

Accordingly, because the enforceability of the arbitration clause has been decided in a prior lawsuit, the doctrine of collateral estoppel applies to bar relitigation of that issue in the present case. Therefore, defendants' motion to stay is due to be granted and plaintiff must submit her current claims of discrimination to an arbitral forum. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this  6th day of December, 1999.

_____
United States District Judge